UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT JOSEPH ZITO, SR.,

        Plaintiff,

       v.                                    **DECISION AND ORDER**
                                                    17-CV-1325S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

      1.      Plaintiff Robert Joseph Zito, Sr. brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits ("DIB") under Title II of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed an application for DIB with the Social Security Administration ("SSA") on August 22, 2013. (R.[1] at 223). Plaintiff alleged disability since March 1, 2013 due to cervical spine injury; surgical discectomy and fusion of cervical spine; and crushing injury of C3-C7. (R. at 252). Plaintiff's application was denied (R. at 169-173), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 175).

      3.      On June 30, 2016, ALJ Bryce Baird held a hearing at which Plaintiff—represented by counsel—appeared and testified. (R. at 97-158). Vocational Expert ("VE") Jay Steinbrenner also appeared and testified via telephone. Id. At the time of the

---

[1] Citations to the underlying administrative record are designated as "R."

hearing, Plaintiff was 51 years old, with some college education and past work experience as a firefighter and a bellhop. (R. at 110-11, 253).

  4. The ALJ considered the case *de novo* and, on September 13, 2016, issued a written decision denying Plaintiff's applications for benefits. (R. at 12-26). On October 25, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-6). Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on December 22, 2017. (Docket No. 1).

  5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 7, 11). Plaintiff filed a response on September 11, 2018 (Docket No. 12), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

  6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's September 13, 2016 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

> mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 1, 2013. (R. at 14). At step two, the ALJ found that Plaintiff has the following severe impairments: herniations of the cervical discs with multiple level cervical

disc fusion; cervical chondromalacia; disc herniations of the thoracis spine; lumbar disc disease, status post L3-L4 discectomy; carpal tunnel syndrome; recurrent headaches; and obesity. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-15).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain exceptions:

> [Plaintiff] could lift and carry up to 20 pounds on occasion and up to 10 pounds frequently, can sit for up to 6 hours in an 8 hour day, can stand or walk up to 4 hours in an 8 hour day, would be limited to occasional climbing of stairs, balancing, and stooping, no climbing of ladders, ropes or scaffolds, kneeling, crouching, or crawling. [Plaintiff] is limited to frequent reaching including overhead reaching bilaterally, frequent handling, fingering and feeling of objects bilaterally, no exposure to excessively cold or hot environments, excessive vibration, or hazards, such as unprotected heights and moving machinery. [Plaintiff] is limited to no concentrated exposure to irritants, such as odors, dusts, gases or poor ventilation.

(R. at 16).

13. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 24). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 25). Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 25-26).

14. Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ was "inappropriately selective in his consideration of the medical and opinion evidence;" and (2) the ALJ "failed to consider the cumulative impact of Plaintiff's impairments on his RFC." (Docket No. 7 at 25).

Plaintiff requests remand for rehearing and for additional consideration of whether the Medical-Vocational Guidelines direct a finding of disability as of Plaintiff's 50th birthday. (Docket Nos. 7 at 31, 12 at 1-5). For the reasons that follow, remand is warranted.

15. Plaintiff contends that "[t]he ALJ failed to follow the regulations in evaluating the medical opinion evidence of record" and "fail[ed] to give good reasons for rejecting portions of Dr. Stoffman's opinions which supported finding Plaintiff disabled." (Docket No. 7 at 27, 29).

16. The treating physician rule "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(d)(2).

17. When a treating physician's opinion is not given controlling weight, the ALJ must "consider several factors in determining how much weight the opinion should receive." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015). These factors include: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. Id.; see also Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam); 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)-(6).

18. "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)).

19. "[F]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Burgess at 129-30 (quoting Snell v. Apfel, 177 F.3d 128, 133, (2d Cir. 1999)); see also Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998); 20 C.F.R. § 404.1527(d)(2).

20. In this case, Plaintiff had received care from Dr. Michael Stoffman's neurosurgical practice for complaints of neck, thoracic and lower back pain stemming from work-related injuries. (R. at 1057). As of the date of the ALJ's decision, Dr. Stoffman had treated Plaintiff for more than three years and performed three surgeries on Plaintiff's spine.[3] Defendant's summary of the relevant medical evidence indicates that in addition to the three spine surgeries, Plaintiff was seen by Dr. Stoffman or his physician assistant, Victoria Henry, at least twenty (20) times between 2013 and July 2016. (Docket No. 11 at 3-11) (citing R. at 352, 545, 547, 549, 737, 742, 744, 746, 748, 750, 752, 754, 905, 927, 932, 934, 942, 986, 1032, 1053). Dr. Stoffman also submitted multiple opinions of Plaintiff's temporary disability percentage to the Worker's Compensation Board between 2013 and 2016. (R. at 23, 538, 541, 680, 695 , 711, 741, 743, 745, 749, 751, 753, 876, 915, 978).

21. At the request of the ALJ (R. at 1056), Dr. Stoffman completed a medical source statement of ability to do work-related activities on July 26, 2016. (R. at 1057-63). Dr. Stoffman opined that Plaintiff could frequently lift/carry up to 10 pounds and could occasionally lift/carry up to 20 pounds. (R. at 1058). Plaintiff could sit for six hours and

---

[3]Dr. Stoffman performed a C4-C7 anterior cervical discectomy and fusion on June 27, 2013 (R. at 352, 357-58); a right L3-4 microdiskectomy on May 19, 2014 (R. at 735-36); and a C3-4 anterior cervical discectomy and fusion re-operation and exploration of the arthrodesis C4-C7 on March 26, 2015 (R. at 754, 923-24).

stand/walk for one hour without interruption; and in an 8-hour work day, Plaintiff could sit for a total of eight hours, and stand/walk for a total of four hours. (R. at 1059).

22. Bilaterally, Plaintiff could reach (overhead or all other) and push/pull occasionally, and he could handle, finger, and feel objects continuously. (R. at 1060). Dr. Stoffman also indicated Plaintiff could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl, but he could occasionally climb stairs/ramps and balance. (R. at 1061). It was also noted that Plaintiff could tolerate only quiet "(library)" noise. (R. at 1062).

23. Dr. Stoffman also provided a letter to support his assessment in which he wrote "[u]nfortunately, despite surgical intervention and multiple conservative treatment options, including physical therapy, chiropractic treatment, medical massage therapy and medication management, [Plaintiff] still continues to suffer with persistent complaints." (R. at 1057).

24. The ALJ recounted Dr. Stoffman's temporary impairment evaluations and July 2016 medical source statement and noted: "I assign some weight to Dr. Stoffman's opinions to the extent that they are consistent with the longitudinal medical record." (R. at 23). However, the ALJ is silent on what portions of Dr. Stoffman's opinions meet this criterion. Id.

25. The ALJ also noted he "assign[ed] little weight to Dr. Stoffman's opinion with respect to his many estimations of [Plaintiff's] temporary disability as this is an estimation for the purposes of Worker's Compensation, which […] is based on a different statutory scheme." Id.

26. With respect to Dr. Stoffman's July 26, 2016 medical source statement, the ALJ "assign[ed] weight," stating "it is generally supported by the [Plaintiff's] medical

history and treatment record." Id. However, the ALJ assigned "very little weight to Dr. Stoffman's opinion about [Plaintiff's] inability to stoop" because the ALJ found "this is unsupported by the record, specifically the recent examination where [Plaintiff] was able to squat." Id. (citing the findings of consultative neurological examiner David Brauer, M.D. (R. at 1038)).

27. Dr. Brauer examined Plaintiff and completed a medical source statement of ability to do work-related activities on July 12, 2016. (R. at 1034-47). Dr. Brauer found that "there is no limitation in [Plaintiff's] ability to sit or stand" (R. at 1039) and opined Plaintiff could occasionally lift/carry up to 10 or 20 pounds and could never lift/carry more than 20 pounds (R. at 1041). Dr. Brauer also indicated Plaintiff could sit or stand for two hours and walk for one hour without interruption, and in an 8-hour work day, Plaintiff could sit for a total of four hours, stand for a total of three hours, and walk for a total of two hours. (R. at 1042).

28. In Dr. Brauer's opinion, Plaintiff could frequently reach (overhead and all other); handle, finger, and feel; and push/pull. (R. at 1043). Dr. Brauer also opined that Plaintiff could never climb ladders or scaffolds, could occasionally climb stairs or ramps and balance, and could frequently stoop, kneel, crouch, and crawl, as well as tolerate loud "(heavy traffic)" noise. (R. at 1044).

29. The ALJ assigned "significant weight to Dr. Brauer's opinions to the extent that they are consistent with the longitudinal medical record." (R. at 22). However, the ALJ again failed to identify which portions of the opinion were "consistent with the longitudinal record" and thus worth of "significant weight." Id. The only clarity provided on this point is that the ALJ assigned "little weight to Dr. Brauer's opinion with respect to

9

[Plaintiff's] ability to stand and walk," finding that portion of the opinion both internally inconsistent—Dr. Brauer's narrative indicated "no limitation in [Plaintiff's] ability to sit or stand" (R. at 1039)—and unsupported by the record. Id.

30. An "ALJ may 'choose between properly submitted medical opinions,'" Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998), including the report of a consultative physician," see Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983). Heaman v. Berryhill, 2019 U.S. App. LEXIS 7324, *5, __ Fed. Appx. __ (2d Cir. 2019). However, "the ALJ is not 'permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion.'" Heaman at *5 (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)); see also Burgess at 131.

31. Here, the ALJ does not choose "between" medical opinions in the record in determining Plaintiff's RFC. Instead, the ALJ seems to have cobbled selective portions of contradictory opinions together with little explanation of what weight was granted to each opinion or the rationale for those decisions.

32. The ALJ gave some explanation for rejecting Dr. Brauer's opinion of Plaintiff's ability to stand and walk, pointing out the internal consistency with Dr. Brauer's narrative report. However, the ALJ gave no explanation for rejecting Dr. Brauer's opinion that Plaintiff could lift and carry up to 10 pounds only "occasionally" (R. at 1041). Nevertheless, the ALJ somehow determined that Plaintiff could lift and carry up to 10 pounds "frequently." (R. at 16).

33. This lift/carry limitation is consistent with Dr. Stoffman's medical source statement, to which the ALJ "assign[ed] weight," but the decision provides no explanation for adopting Dr. Stoffman's opinion over Dr. Brauer's on this point. Similarly, the ALJ

failed to explain why he adopted Dr. Brauer's opinion that Plaintiff could "frequently" reach (overhead and all other) (R. at 1043) and rejected Dr. Stoffman's treating source opinion that Plaintiff was limited to "occasionally" reaching (R. at 1060). (R. at 16).

34. Drs. Brauer and Stoffman agreed that Plaintiff could never climb ladders or scaffolds (R. at 1044, 1060), and the ALJ fully adopted these limitations. (R. at 16). However, Drs. Brauer and Stoffman disagreed about whether Plaintiff can stoop, kneel, crouch, and crawl. Dr. Brauer opined that Plaintiff could perform these actions "frequently" (R. 1044), while Dr. Stoffman opined that Plaintiff could "never" perform these activities (R. at 1061).

35. Here, the ALJ adopted Dr. Stoffman's opinion that Plaintiff could never kneel, crouch, or crawl, once again with no explanation for crediting one medical opinion over the other. (R. at 16). With respect to the ability to stoop, the ALJ refused to adopt either opinion and instead seems to have averaged the two physicians' opinions to conclude that Plaintiff has the RFC to perform "occasional […] stooping." (R. at 16).

36. The ALJ gave no explanation for rejecting Dr. Brauer's opinion of Plaintiff's ability to stoop (R. at 22) but did explain that he rejected Dr. Stoffman's opinion on this point because Plaintiff "was able to squat" during a recent examination (R. at 23).

37. This Court finds the ALJ's rejection of Dr. Stoffman's opinion regarding Plaintiff's limitations with respect to ability to reach and stoop to be particularly concerning.

38. Defendant claims that the VE "said that a hypothetical claimant of [Plaintiff's] age, education, work experience, and limitations, could perform other work in the

economy as an usher/lobby attendant even if he was limited to occasional reaching."
(Docket No. 11 at 24). This claim is erroneous.

39.     The ALJ determined that Plaintiff is limited to standing or walking "up to 4 hours in an 8[-]hour day." (R. at 16). The VE testified that an individual who "can stand and walk for *six* out of eight hours" and was limited to occasional reaching could perform work as an usher/lobby attendant. (R. at 145) (emphasis added). However, the VE also clearly stated that such work would be "eliminated" if the individual was limited to stand and walk limitation of four hours. Id.

40.     SSR 83-14 states that "the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type," defined as "bending the body downward and forward by bending the spine at the waist." SSR 83-14, 1983 SSR LEXIS 33, *7, *12. Plaintiff points out that the ability to squat "is a different postural activity" than the ability to stoop, and Defendant seems to agree. (Docket Nos. 7 at 30, 11 at 24).

41.     Nevertheless, Defendant argues that "Plaintiff's ability to squat was entirely relevant to [Dr. Stoffman's] stooping limitation" because "there is no indication in Dr. Stoffman's opinion that he meant bending at the waist when he said no stooping." (Docket No. 11 at 22-23). Defendant goes on to claim "[t]o the contrary, it is far more likely that [Dr. Stoffman] meant squatting, as the common definition of stooping means bending forward *and* downward at the same time, while sometimes also bending at the knees." Id. (emphasis in original).

12

42. Setting aside the fact that nothing in the record supports Defendant's contention that Dr. Stoffman "likely […] meant squatting" when he opined on Plaintiff's ability to stoop, Defendant's argument still fails.

43. "A reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'" Snell at 134 (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 9 L. Ed. 2d 207, 83 S. Ct. 239 (1962)).

44. Even if Defendant's argument had merit, this Court would not accept it as a *post hoc* rationalization of the ALJ's decision. The ALJ did not reject Dr. Stoffman's opinion because he thought the doctor "meant squatting." The ALJ rejected Dr. Stoffman's opinion because Plaintiff was "able to squat" for Dr. Brauer. (R. at 23).

45. Defendant also argues that the ALJ correctly rejected Dr. Stoffman's stooping and reaching limitations because "Plaintiff maintained an array of daily activities that belie his claimed inability to stoop" and "[h]e also performed extensive daily activities that would have required far-more reaching than just occasional reaching, including cooking, cleaning, driving, doing laundry, opening his pool, helping care for his ill mother, and performing childcare." (Docket No. 11 at 23-24).

46. The ALJ referenced many of these reported activities in the RFC analysis and found that "[Plaintiff's] activities are more extensive and his capabilities are greater than would be expected of one who is alleging totally disabling impairments and limitations." (R. at 21). However, the record gives very little insight into the manner that Plaintiff actually performed any of these activities.

47. In 2013, Plaintiff described his mother, who lived with him, as "self-sufficient" and described his 12-year-old son, of whom he has joint custody, as "very self-

sufficient." (R. at 264). He testified that prior to her move to an assisted living facility, his mother had a full-time nurse (8 A.M. to 5 P.M.) and was mobile and could "make her own sandwiches and what have you" despite some dementia. (R. at 126-27). Plaintiff also testified that his five siblings helped care for their mother. Id.

48. Dr. Brauer noted that Plaintiff "cooks on occasion, but not routinely" and "[h]e does some cleaning and laundry. (R. at 1037). We have no information about the setup of Plaintiff's kitchen or laundry facilities, nor about the manner in which he performed these activities, certainly not enough detail to conclude that the activities "belie an inability to stoop" or "required far-more reaching than just occasional." (Docket No. 11 at 23-24).

49. Here, the ALJ's discussion of weight afforded different medical opinions lacked specificity ("I do; however, assign *weight* to Dr. Stoffman's medical source statement") (R. at 23) (emphasis added) and there is no meaningful analysis of consistencies or inconsistencies between the medical record and the opinion evidence.

50. Moreover, the ALJ rejected significant portions of a treating physician's opinion without any consideration of the factors relevant to how much weight should be afforded that opinion. This omission is especially egregious where, as here, the rejected limitations (reaching, stooping) are related to the spine, and the physician had treated Plaintiff's back for several years and had performed three separate spinal surgeries.

51. Finally, the Court notes that the ALJ's RFC determination includes some limitations that differ from those offered by every medical source the ALJ credited. This suggests an impermissible substitution of an ALJ's view of the medical proof for the views of both the treating and consultative physicians. For the foregoing reasons, the Court

14

finds that the ALJ's evaluation of the medical opinion evidence is not supported by substantial evidence. Therefore, remand is required.

52. In addition to challenging the ALJ's evaluation of the opinion evidence, Plaintiff argues the ALJ failed to consider the cumulative impact of his impairments, particularly headaches, and requested further consideration of whether Plaintiff would be found to be disabled as of his 50th birthday. (Docket No. 7 at 25, 31). This Court offers no opinion on these points because the case is being remanded on other grounds. Upon remand, the ALJ should review and readdress these issues as appropriate.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated: April 16, 2019
           Buffalo, New York


                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                    United States District Judge